Good morning. May it please the court, my name is John Peterson and we represent, I'm joined here by my partner George Thompson and Jerry Wiskin of Simons & Wiskin. We are representing Ribitech Products, the appellant in this matter. Your honors, this case presents a question of first impression and the question is this. When a patent owner has obtained a section 337 general exclusion order barring the importation of goods that infringe particular patents, may it then go to the district court and ask the district court to issue an injunction against the importation of precisely the same goods covered by precisely the same patent claims and the same exclusion order? Doesn't the district court have independent jurisdiction under 271A? The district court has jurisdiction of certain patent matters under 271A unless the court were to conclude that this is a matter that arises under the international jurisdiction. This is different parties, different kind of case, different remedies? Not necessarily a different remedy, your honor. Here's why. This court said in Texas Instruments v. Tessera in comparing 337 orders and district court injunctions that the difference is that a 337 order essentially has its own self-executing provision for customs exclusion of the goods. Yes, 337 is against the products whereas this action is against parties. But the enforcement of this action would be an exclusion of the goods enforced by customs as this court said in Texas Instruments v. Tessera. And the problem here is that Fuji walks in its own footprint. The claims in the injunction and the execution and the enforcement of the injunction would trigger an exclusion under section 337 which would be protestable. Isn't your real complaint with Congress and not with the case law? I mean, you clearly have a section 271A remedy. I mean, Fuji does. It says the act of importation is an act of infringement. You want an activist panel of judges to rewrite the law for you? No, no. What we want the court to do is to enforce the rule of primacy of jurisdiction that was enunciated in the Orleans case. Right, but I mean, if you look at your footnote 8, you can see that there is clear authority in the district court to entertain actions for post-importation, right? That's correct. And so the very goods that the CIT has held to be non-infringing, right? Yes, Your Honor. Those goods can now be challenged by Fuji and if you try to sell them in the United States, right? And the district court can come to the conclusion that those are infringing goods. So you're willing to concede that there can be inconsistent remedies between a 271 cause of action and a 337 situation? Well, there shouldn't be inconsistent decisions. So your real beef is simply with making, with your willing to let the district court decide that the goods that the CIT has held are not infringing, you're willing to let the district court find those goods are infringing. Then it seems to me that you've got a tiny beef, if any. Well, I don't know that we're willing to. Haven't you conceded in footnote 8? Well, what we're saying is that you don't challenge the authority of the district court to entertain an action challenging post-importation conduct. Your Honor. And so some of the very cameras that the CIT has said the customs were wrong to hold them up, right? CIT said no. In a different but related case, yes. Right. But just assume it's the same box. It seems to me that you're willing to allow the district court to chase down cameras after they've passed through customs. If they've passed through customs as a result of a CIT order that the goods are not infringing, Congress left a remedy where you can have an inconsistent result. Well, the question of whether a CIT decision would be binding on the district court with regard to that matter isn't really before the court here. What footnote 8 is meant to... We know it wouldn't be binding. We've already held that. I know. No collateral. What footnote 8 is meant to indicate is that what we're merely challenging is the jurisdiction of the courts, the district court, to enter an action seeking an injunction that duplicates the 337 remedy. But that's a comedy question rather than a jurisdiction question, isn't it? I mean, the district, as Judge Clevenger has pointed out, there is overlapping jurisdiction here. And Congress may have made a mistake in creating that, but it did create it. So the question is once the CIT jurisdiction is attached and it's considering whether to exclude particular goods, it strikes me that your real argument is that the district court ought to defer to the CIT and stay its hand so that it doesn't issue an injunction which is inconsistent with what the CIT has done. Well, it's not even a question of being inconsistent. It's a question of intruding on the CIT's exclusive jurisdiction. Well, what are we dealing with? Are you worried about the goods that were ordered to be excluded by the ITC and whether those goods can be sold abroad without incurring U.S. liability? No, we're not to that issue yet. That would be further from the issue. We're worried about the goods that are admitted under the exclusion order or the goods that are excluded under the exclusion order. We're worried about both, and here's why. At the time this case was filed, Rippy Tech's merchandise was already the subject of exclusion lawsuits that were pending in front of the Court of International Trade. Those cases, some of them are still pending. Now, the issues are exactly the same. The questions of infringement are the same. Yeah, but is there a conflict between what the ITC exclusion order does and what the district court injunction does? So they require different things with respect to either category of merchandise. Not to the extent that the ITC, that the district court injunction is ever enforced by customs as this court indicated in Texas. Well, that's not the question. Do they have different scope? In other words, the ITC is allowing something to happen which the district court is prohibiting. That would be the case. Well, in what regard? Well, the scope is exactly the same. The claims of infringement are the same merchandise with the same patents. So the proof of infringement is the same. I think we're talking about the relief. I think the question Judge Dyck is posing is, is the relief that the ITC afforded to Fuji with a general exclusion order the same in scope as the relief that the district court is providing to Fuji in the injunction here? Well, it is. Actually, the ITC order is broader because it covers more parties than just this plaintiff. It covers everyone. For example, does the ITC general exclusion order affect in any way your client's freedom to take the goods back out of the United States? No. Does the injunction here in any way impede your client's freedom to take the goods out of the United States? No, but we're talking about the ability to bring them into the United States. That's what concerns us. I'm not understanding this. I thought your complaint was that under the ITC exclusion order you were allowed to re-export the things if the things were found exclusive. We're not barred from that. This case isn't really about the re-exportation. The district court order has nothing to do with that? No. They haven't blocked us from re-exporting. What this case is about is import. I don't think you've read the injunction, sir. I've got the right one. It's in the appendix, right? Page 005? Oh, okay. Well, in that case... Your client is restrained from delivering outside the United States to persons or entities known by a person subject to the order who intend to export and send it back in, right? As of the time that that was issued, I think anything that had been exported by my client had already gone out. Okay. So the point is that you're not concerned with taking the goods away from the United States once there has been an exclusion order or an injunction by the district court against importation? No. We're concerned about importation. What's the problem? In terms of importation in the United States, what's the problem with having the two injunctions? Do they impose inconsistent obligations? Do they allow different things? What's the issue? Well, no. They impose duplicate burdens. They require duplicative litigation involving the exact same patent plans. That's too abstract. What is it in practical terms? What's the difference in the scope of the two orders? The injunction is broader insofar as it covers exports, obviously, and may cover resale in the United States. You say you're not concerned about that. What about things that are coming in the United States? Are the orders different? Do they have different criteria in that? No. They don't have different criteria as far as infringement and defenses. But the problem is that they require litigation in two different courts, and it intrudes on the jurisdiction of the CIT. You've already said you don't mind being allowed to occur. We're talking about whether the importation will occur. The problem here is if Customs has excluded goods, which they have in certain cases, we have to prosecute an action in front of the Court of International Trade to demonstrate non-infringement. But then, after that happens, we have to go to the district court, and we have to prove to the district court a second time the exact same facts and the exact same defenses. Now, this is a case. Doesn't 1659 envision exactly that? I don't think it does because of the, again... It concedes that there's jurisdiction in both places, and it says that on your request you can get a stay to stop one during dependency of the ITC proceeding, and then you come back and finish up what you have business underway. But 1659 only applies during the initial ITC investigation, which was many years ago. In this case, the ITC investigation is long finished. But it shows that the U.S. Code considers there to be jurisdiction in two places. At that stage, yes. But 1659 does not speak to what happens after an exclusion order is issued. Did you ever ask the district court to stay its hand pending the outcome of the ITC proceeding? We did. We asked them to... Well, we moved to dismiss this case, but the district court is not looking to stay. Did you ask for a stay? I don't know that we asked for a stay specifically, but we certainly couldn't ask for it under 1659. Well, but you could have asked, under general principles of comity, the district court to stay its hand... Well, we did ask the district court to stay the case pending this appeal. They declined. That's a different... But you did not ask to have the district court stay pending the outcome of the ITC proceeding. There is no ITC proceeding. There's court of international trade proceedings. Or pending the outcome of the court of international trade review of the ITC. Yeah. The district court indicated, though, that they don't consider themselves to be the least bit bound or, you know, they don't care about that. So it doesn't... It's not going to avail us anything. But the answer is you didn't ask them to do that. We didn't ask, but it's within their discretion. I mean, it really wouldn't be appealable one way or another if they were to grant it or not. The problem here is that ultimately, even if... I mean, if you'd asked for a stay and the stay had been denied, you could have appealed the denial of the stay... On... As part of your appeal on the grounds that there was an abuse of discretion in not having granted the stay. It would have been on an abuse of discretion standard. Which is still fine. Well... And that's where you would have raised, if you wish, the comity issue. But we think it's under the Orleans Doctrine. We think it's more than a comity issue. We think it's an issue of jurisdiction. The Orleans Doctrine is dealing with a different statute. It's with the Beef Act. And it talks about under the Beef Act, it doesn't anticipate that there would be a duplicative procedure. This is a patent act. And 1659 says there's two procedures. And we said the same thing in Texas Instruments, quoting, in fact, the patentee can bring suit in both the district court and in the ITC against an alleged infringer who is importing an allegedly infringing product. We can't depart from Texas Instruments. Right. But I don't think Texas Instruments spoke to the question of what the patentee can do after the 337 order has been issued. And as this court said the other week in the The patentee would have customs almost be in an advisory role and say, well, if customs excludes it, that's fine. If they admit it, we're going to have the district court review it. It's happened before, hasn't it, that there's been a difference between an ITC proceeding and a district court proceeding? And in that case, what did we say? The district court proceeding controls. Yes, but not under these specific facts where the patentee walks in the footprint of the 337 order. I can't take my time. Thank you, Mr. Peterson. We'll hear from Mr. Rosenthal. Your Honors, my name is Lawrence Rosenthal of Strzok & Strzok & Levan of New York City. I represent Fuji Photo Film, who is the plaintiff in the district court. I regret that I have to open with an observation about Your Honors' decision in Texas Instruments, which is one of the foundations of the reply brief. Your Honor, in that case, observed that the patentee after getting an injunction from the district court can take the additional step of requesting customs to enforce the district court judgment by seizing the offending goods. Unfortunately, there is no authority for that in law or regulation. And in fact, if you try to, customers would laugh you out of the room. The reality is that one of the differences between the ITC and the district court remedies that one tells clients or lectures about is the fact that customs is one of the groups who enforces ITC orders and doesn't enforce district court judgments. Now, there was a second part to Your Honor's observation that the ITC— Are you trying to re-argue that case? No, Your Honor, but it's one of the linchpins of the reply. It's quoted extensively and says that's what makes the two injunctions the same, which it doesn't. The other point which Mr. Peterson did correct, and I think he really knows that both are wrong, was that the ITC automatically enforces its judgment by directing the U.S. Customs Service to seize goods. And that's the circumstance that seizure occurs. But again, Mr. Peterson corrected that observation in a footnote in the reply brief but wrote on the back of the first quotation. The other part of the issue is the so-called Orleans doctrine or rule or whatever you want to call it. And here— How is that conflict supposed to be worked out? If you have two parallel injunctive proceedings going on—it's not so much of a problem if it's a damages action of the district court—but if you have two parallel injunctive proceedings going on between the ITC and the Court of International Trade on the one hand and the district court on the other, and there's a potential difference in scope between the injunctions or interpretation of the injunctions, how is that supposed to be worked out? If it's not a jurisdictional matter, which it appears not to be, how is it supposed to be resolved? The statutes, unfortunately, as I think Your Honor observed, created this situation. But there are lots of situations— Situations like this. Lots of situations under lots of statutes where there's overlapping jurisdiction. There's a lot of law about this. And courts are supposed to try to avoid issuing conflicting injunctions, right? Your Honor, the court is issuing only one injunction. And as Judge Rader observed, its rulings have primacy over the Court of International Trade. I don't really view— Isn't that the question? I mean, you just said, well, its rulings have primacy over the other court. That's the whole thrust of your adversary's argument. Well, Your Honor, I think it's— Primacy lies in the 337 proceeding along with its enforcement mechanism. Well, the CRT, in my view, and I think the way the statute is written, is reviewing customs determination that the goods should be excluded or not excluded, which in turn is interpreting the order of the ITC. And the court almost applies an administrative law test in reviewing the judgment of the CRT, not the test that's used in the reviewing of district court cases. The court has repeatedly said, in another Texas Instruments case, which is the leading case, that the rules, that the findings of the ITC, and even the findings of the Federal Circuit in dealing with the ITC's decision, are not ratioed to counter a collateral estoppel, although they're entitled to— Correct. But how do we work out potential conflict? How are the district courts and their injunctive orders? Are you saying there's no mechanism? Your Honor, I believe that that's Congress's problem. So they just go their own way without anybody caring that the injunctions may have different scopes? The CRT doesn't issue injunctions, Your Honor, in this case. The ITC— The ITC does, and— They review it. They review it. If the district court would find— Suppose there's a conflict between the relief granted in one forum and the relief granted in another forum. How is it supposed to be worked out? Well, in our case, it actually was worked out, because in the initial ITC decision by this court, it set out a test for permissible repair process that had eight steps. When we went to the district court, the district court enunciated a 19-step rule, which they adopted in an enforcement proceeding against Mr. Bannon and Jazz, who was Ribby's predecessor. The ITC adopted the district court 19-step process, so that there is a give and take between the two forums. They're not acting in a vacuum. One looks at the other. Let me pose you a hypothetical and ask you what would be your view of how the problem would be solved. Let's assume, for example, that the ITC's general exclusion order permits the person that brought the cameras into the customs warehouse could freely re-export them. They said, once we've decided that these goods are infringing, then you can send them anywhere you want, and you're free. You take the same cameras, the same hypothetical. The U.S. district court enters an injunctive order requiring the importer to destroy the Now, those would be two inconsistent injunctive reliefs over the same act of infringement, right? Well, not strictly so, because the ITC has no power to order destruction or seizure. I understand that. That's the problem. And the U.S. district court does, presumably, subject to review. So just assume in a parallel proceeding, you had one general exclusion order that said to Bannon, well, go ahead and take your cameras back, sell them in Japan, wherever you want, just not in the United States, right? But the U.S. district court decided that a more drastic remedy was required to destroy the cameras. And then the question is, is that really what Congress intended? Apparently, it's what Congress, the language of the statute, the statutes leave you, because certainly 337 says, in addition to other remedies. Would a district court have abused its discretion in entering an injunctive order requiring destruction of the cameras? The district court is operating on a different set of rules and facts. The district court has before it a lot of information that the ITC may not have in front of it when it issued that order. For example, in this particular case, in our particular case, what the district court did was not order the destruction of the goods. What the district court ordered was, stop. You sold them for sale outside the United States. Fuji repeatedly said they wanted to sample these goods because it's their best evidence of what the goods look like. Let Fuji do it to the extent that they can capture them. We caught 10 out of 17 or 18 containers. We took one camera out of every 10 cars. But you're not addressing the conflict problems. I would have thought that your answer would be, if you start out with an ITC proceeding and you're worried that the district court could enter an injunction, put aside damages, that's inconsistent with that, maybe you should go and ask the district court to stay its proceedings. This court has repeatedly said that they dislike the practice of the district court either staying or ordering the stay of the ITC. So I don't think that's a practical remedy. We've said the district court can't stay its own proceedings. Not that they couldn't, but you discouraged that kind of order. And the practice has developed over the years. We discourage what kind of order? You discourage an order of staying the ITC. No, no, that's not what I'm talking about. I'm asking about an order in which the district court says, I am going to stay the district court proceedings to avoid a conflict. That has happened, Your Honor. Uh-huh. That has happened. There is a remedy here. Well, that's a possible remedy, but it doesn't apply in this case. And I know it's an academic remedy, which is always available here. Are you aware of a circumstance in which that has happened? Well, first of all, the statute provides for that circumstance. I just was asked as a matter of your experience, because your answer to Judge Dyke just a second ago suggested that you were aware of an instance in which a U.S. district court had either sua sponte or at the request of a party, stayed its hand pending the outcome of a 336. I have not personally experienced this, but I do know that when the shoe was on the other foot, and I've asked district courts to stay either itself or the ITC, I've been told no. So I am not aware of a case that's the other way, and I don't think it's even what Congress contemplated. District court cases take a sufficiently long time relative to the duration of an ITC case, so that it's likely that the ITC case will be completed long before the district court gets to the judgment stage. Did you ask the district court for the provision in the injunction that affects the freedom of men to re-export or to export the goods? The only, yes. This is the language that says they can't send it out. Delivering outside the United States, the person already known to intend to bring it back in again. This is on page 5 of the injunction. In paragraph 1, it's hereby ordered that. Your Honor, that's not the import of that language. That language is addressed to, in effect, an infringement inducement. What does it mean? Help me out a little bit. Your Honor, what it means is that Bannon and Ribbitech are prohibited from selling the goods outside the United States with knowledge that they're either going to be imported in the United States or are going to be resold in the United States. And that has a historical basis that there was a period of time in the history of this case when that's exactly what Jazz did. They sold outside the United States through a subsidiary to, for example, Walmart, who then brought it in. So this injunction doesn't prohibit them by complying with the exclusion order by selling the goods abroad as long as they're not going to come back into the United States. No, Your Honor, the only issue... Yes, yes. No, it doesn't prohibit the exploitation. What is on the block and before the district court is whether the sale of the goods which are already in the United States is itself an act of infringement, which justifies an award of damages. But not injunction. The injunction has nothing at all to do with that issue. The court did not... The theory here is... No, let me just stop you for a second. The theory here is that selling in Tokyo, making the sale of the cameras in Tokyo to somebody that Bannon knows is going to bring them back to the United States is barred, right? That's correct, Your Honor. It's a form of inducement. A form of inducement. Of inducement. Knowing that the goods are infringing, selling the goods to someone who is going to commit an act of infringement. The sale is going to induce the act of importation. Of importation, which is an act of infringement or sale in the United States. So making, if you were making something abroad, right, and you were making it for someone that you knew and bringing it to the United States, do you think the U.S. District Court could enjoin that conduct? If you know, yes. I think that's a knowledge issue with the 271, whether or not it's... Do you have a case? Is there a case where that's happened? I mean, ordinarily, making, using, or selling outside the United States is a free shot, you know? Your Honor, I apologize that I can't cite to the case, but I will represent that there are cases where the issue, the defense usually is the foreign defendant says, I am not subject to this court's jurisdiction because I didn't do any acts that violate the U.S. patent. Right, but don't you have to have the act of importation? Well, that's... In my hypothetical, let's assume your client's making something abroad and you know perfectly well that it's infringing, and you say, fine, I can make abroad anything I want. Well, infringement inducement requires that there be an infringement. An act of infringement. An act of infringement. And this injunction requires that there be an act of infringement, which is either importation into the United States or sale in the United States. No, intention to import. Correct. Intention to import is unknown. Well, it's knowing. Excuse me? It's knowing, Your Honor. But that hasn't happened. I mean, this injunction is going to reach something that's not an act of infringement. Well, I don't think so as a practical matter. Okay, let's assume. Just read the injunction. Assume that Bannon sells these cameras outside the United States to someone that they have reason to believe intends to bring them back to the United States, but the person never brings them back to the United States. That's why I asked you my hypothetical about making something outside the United States. If I make something outside the United States that's infringing and I sell it to somebody who tells me it is my intention to bring those goods to the United States, that between the time of expressing the intention, they decide to send them to England. Your Honor, it may be a literal violation of the order, but it would not be one that would be cognizable by the court for the simple reason that the predicate of this arrangement is inducement, and inducement requires infringement. And I don't think that there's a court, certainly not the district court we're in front of, who is going to look at that issue or concern itself with contempt if infringement doesn't occur in the United States. I think that's the bottom line. Thank you, Mr. Rosenthal. Mr. Peterson? Thank you. With very little time, I'll just try to make two or three points. First of all, with regard to the Texas Instruments v. Tosera case, the court did use the word seize, but I think if you look at the decision, it's pretty clear that the court meant exclude. That was really the intention of that. But secondly, I'd like to address Judge Dyke's question of how do we avoid the conflict. And I think it's more than a question of comedy. We think it's a question of statutory jurisdiction. Congress has always tried to keep the district courts and the Court of International Trade out of each other's business. And there's two statutes which we think come to bear here. The first is 28 U.S.C. 1581a, the exclusive jurisdiction of the Customs Service of the Court of International Trade to hear protest actions. The inexorable result of the injunction that Fuji has received here, if it's enforced, will be a customs exclusion which we will protest, which will get us back into the Court of International Trade. The district court should not be involved. This is a case exclusively going to the Court of International Trade. The second statute, which at least indicates that intention, is 28 U.S.C. 1340. Yes, this action is brought under the patent laws. But because of the 337 order, it also at least arises partly under the Tariff Act. That is an act which provides for the raising of revenue. And 1340 says those cases don't exist. So your real argument is that when 271a refers to an act of importation being an act of infringement, it's really surplusage. It's not surplusage because in most cases there won't be a 337 exclusion order in place. You don't know. But the point is that if you erase, if Congress amended 271a and erased the act of importation as an infringing act, it would be no harm because any patent holder who wants to bring a 337 can, and the act of importation standing alone is harmless. Right. Unless there's some additional conduct. If somebody brings a bunch of cameras into the United States, it sits in customs, and they advertise in the L.A. Times, our camera is cheaper than Fuji, don't buy Fuji at Christmastime, then you've got an offer of sale. Right. But my point is it's essentially harmless, bringing the goods into the customs warehouse. Right. But when it comes to jurisdiction, again, we referred to the Orleans case before, the Beef Act. The Beef Act has specific provisions saying actions under this act that be brought in a district court, and yet this court came in and said, you know, we do have two conflicting statutes, which appear to give jurisdiction to two different courts, how do we resolve the conflict? The court said in Orleans, it was followed by the Ninth Circuit and Universal Fruits, we resolved the conflict in favor of the court that specialized jurisdiction. I think we're getting back into the things we've talked about before, Mr. Peterson. Thank you. Thank you very much.